## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Thomas R. W.,                                    Case No. 18-cv-3041 (SRN/TNL)

           Plaintiff,

v.                                                      **REPORT
AND RECOMMENDATION**

Andrew Saul, Commissioner of Social
Security,

           Defendant.

---

David F. Chermol, Chermol & Fishman LLC, 11450 Bustleton Avenue, Philadelphia, PA 19116 and Edward C. Olson, Disability Attorneys of Minnesota, 331 Second Avenue South, Suite 420, Minneapolis, MN 55401 (for Plaintiff); and

Linda H. Green, Social Security Administration, 1301 Young Street, Suite A702, Dallas, TX 75202 (for Defendant).

---

## I.    INTRODUCTION

Plaintiff Thomas R. W. challenges Defendant Commissioner of Social Security's denial of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381. This matter is before the Court on the parties' cross motions for summary judgment. These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Susan R. Nelson, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons set forth below, the Court recommends that Plaintiff's motion be denied and that Defendant's motion be granted.

## II.    BACKGROUND

### A.  Procedural History

Plaintiff filed an action for SSI on May 15, 2015, alleging a disability onset date of September 20, 1992. Plaintiff alleged an impairment of autism. Plaintiff was found not disabled on October 2, 2015. That finding was affirmed upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge. A hearing was held on December 29, 2017 and, on April 11, 2018, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied his request for review. Plaintiff now seeks review by this Court.

### B.  Administrative Hearing and ALJ Decision

The ALJ found that Plaintiff had the following severe impairments: autism and attention deficit hyperactivity disorder (ADHD). (Tr. 13). The ALJ further found and concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 14-18). The ALJ considered Listings 12.04, 12.10, and 12.11. Following this, the ALJ found Plaintiff to have the residual functioning capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to an environment with moderate noise as defined by the Selected Characteristics of Occupations; restricted to the performance of simple, routine and repetitive tasks; limited to simple work-related decisions; limited in his interactions with supervisors, coworkers, and members of the public to no more than frequent.

(Tr. 18). The ALJ then concluded that Plaintiff had no past relevant experience; that Plaintiff was a younger individual age 18-49 on the date the application was filed; and that he had at least a high school education and was able to communicate in English. (Tr. 30). The ALJ further concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 30). In particular, the ALJ determined that Plaintiff could work as an assembler and garment bagger. (Tr. 31). Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 32).

## III.    ANALYSIS

### A. Legal Standard

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his or her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his or her age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1505(a). Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether:

(1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (citing *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004)); 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." *Boettcher*, 652 F.3d at 863 (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). This standard requires the Court to "consider the evidence that both supports and detracts from the ALJ's decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 393 F.3d 988, 993 (8th Cir. 2005)).

The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Perks*, 687 F.3d at 1091 (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578) (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for

that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Likewise, courts "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578.

### B. Administrative Record

Plaintiff is a younger individual who has been diagnosed with autism spectrum disorder. (Tr. 42). He graduated from high school in 2011. (Tr. 44). While he attended school, he received "one-on-one attention" from a teacher or teacher's aide. (Tr. 44). Since graduating, he has worked on his father and uncle's farm. (Tr. 44). He also, at the time of his hearing, worked a combined 20 hours a week in the kitchens of a Dairy Queen and Hardee's. (Tr. 45-46). Plaintiff had little-to-no interaction with customers or coworkers at either restaurant, though Dairy Queen had discussed the possibility of training him to take orders at the cash register. (Tr. 46). Plaintiff planned to quit his job at Hardee's so that he could work more hours at Dairy Queen. (Tr. 47). He believed that he "would be able to look into" the possibility of working full-time at Dairy Queen. (Tr. 47). Plaintiff believed that his work on the farm amounted to "20 to 30 hours at most." (Tr. 49). Plaintiff becomes tense while he works and often paces; he also becomes nervous when there is noise in his work environment. (Tr. 57-58).

Plaintiff has received treatment from several health care providers. In August 2015, he attended a psychological consultation with Dr. Monique M. Bourdeaux-Colburn. (Tr. 359). She characterized Plaintiff's daily functioning as playing video games, watching television, using his computer, and doing chores around the house and farm. (Tr. 360). She

5

further stated that Plaintiff was able to adequately dress, bathe, and groom himself, and that he could he use the stove, oven, and microwave. (Tr. 360). Dr. Bourdeaux-Colburn indicated that Plaintiff's activity level was within normal limits; that his speech was clear and easy to understandable; that he did not appear defiant, guarded, or defensive; and that his affect was appropriate and within a normal range. (Tr. 360). She also noted that he was in touch with reality, oriented, and not distracted. (Tr. 361). Dr. Bourdeaux-Colburn believed Plaintiff was able to understand and follow directions and would be "able to moderately carry out work-like tasks with reasonable persistence and pace." (Tr. 362). She indicated, however, that Plaintiff "would likely have difficulty responding appropriately to contact with others" and "would likely have difficulty tolerating the mental stressors of at least an entry level workplace." (Tr. 362).

Plaintiff also saw Dr. Timothy Remple, his primary care physician, in January 2016. (Tr. 406). Dr. Remple noted that Plaintiff's mother reported that he had difficulty driving a car; that he tended to experience substantial stress when attempting to complete tasks; that he was able to prepare simple foods and care for himself, but needed reminders regarding his personal hygiene; and that when asked to complete a task, he required instructions to be repeated multiple times. (TR. 407). Dr. Remple stated that it was "very unlikely that [Plaintiff] would ever be able to hold down a competitive job." (Tr. 408). Dr. Remple reiterated this opinion in a February 9, 2016 letter. (Tr. 431).

Dr. Remple referred Plaintiff to Dr. Scott Wichterman for a neuropsychological evaluation. (Tr. 437). Dr. Wicherman stated that Plaintiff's alertness was normal; his attention and motivation were average; and that his orientation was intact. (Tr. 438). Dr.

Wicherman further noted that Plaintiff processed "verbal and familiar information at the lower end of the average range," but that his "[f]luid (unpracticed, abstract) nonverbal abilities are comparatively stronger and grossly intact at their apparent lifelong levels." (Tr. 439). Dr. Wicherman also stated that Plaintiff possessed "satisfactory memory functioning;" that he exhibited "no more than slight and selective executive limitations;" and that test results suggested "selective language limitations." (Tr. 439-40). In general, Dr. Wicherman concluded that Plaintiff's neuropsychological results were "mildly abnormal." (Tr. 440). He further concluded that Plaintiff's "weaknesses" regarding his "social and adaptive functioning" "may interfere with independent living and competitive employment." (Tr. 441).

Following Dr. Wicherman's consultation, Plaintiff began to participate in outpatient therapy with social worker Kayla Olson. She noted that Plaintiff reported feeling anxious in large social settings and when driving, doing something incorrectly, or mocked or teased. (Tr. 458). She and Plaintiff set several long-term goals, including obtaining employment, gaining social supports, and developing independent living skills. (Tr. 459). In subsequent sessions, Plaintiff reported feeling overwhelmed in certain situations, including when working. (Tr. 461). He also stated that he was "fearful of being employed and encountering customers." (Tr. 466). Plaintiff did, however, state repeatedly that he wanted to obtain employment. (Tr. 469, 471).

Plaintiff again saw Dr. Remple in September 2016. Dr. Remple reported that Plaintiff was appropriately dressed and groomed; that his speech was fluent; but that he appeared to fidget and shift in his seat. (Tr. 485).

Dr. Wichterman recommended that Plaintiff be administered the Autism Diagnostic Observation Schedule, Second Edition (ADOS-2). (Tr. 488). That evaluation was conducted by Dr. Jean Rusinak. (Tr. 488). Plaintiff told her that he helped out on the farm, but that he had difficulty completing tasks in the way his father and uncle wanted. (Tr. 488-89). Plaintiff stated that while he wanted a job, he would be "overwhelmed" if he worked in certain areas. (Tr. 489). Dr. Rusinak determined that Plaintiff met the criteria to be diagnosed with Autism Spectrum Disorder, Level 2, Requiring Substantial Support. (Tr. 491). She noted that Plaintiff would find it "difficult for him to maintain friendships or employment." (Tr. 491).

State consultant Jeff Boyd reviewed Plaintiff's claim for SSI. Dr. Boyd determined that Plaintiff would be "able to moderately carry out work-like tasks with reasonable persistence and pace," but that he would have difficultly responding to others and tolerating the "mental stressors" of an entry-level workplace. (Tr. 84). Dr. Boyd further noted that Plaintiff had mild restriction of activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence, or pace. (Tr. 83). Regarding Plaintiff's RFC, Dr. Boyd noted that Plaintiff had moderate limitations in his ability to: maintain attention and concentration for extended periods; complete a normal workday and workweek without an unreasonable number of rest periods; interact appropriately with the general public, get along with coworkers and peers; respond to changes in the work setting; travel to unfamiliar places; or use public transportation. (Tr. 85-87). Ultimately, Dr. Boyd noted that "the file evidence supports a severe mental impairment that is no more than

moderately limiting." (Tr. 84). Dr. Boyd opined that Plaintiff was not disabled. (Tr. 88). His findings were largely reaffirmed upon reconsideration. (Tr. 98-103).

### C.  Limitations in ALJ's RFC and Hypothetical Question

Plaintiff first argues that the RFC set forth by the ALJ, as well as the hypothetical question posed to the vocational expert, did not accommodate all of the limitations that the ALJ found credible. RFC is defined as the most a claimant can do despite his or her limitations, including both physical and mental limitations. 20 C.F.R. § 416.945. The Commissioner's determination of a claimant's RFC must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Likewise, "[a] hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996). Assuming the hypothetical question meets this standard, testimony from a vocational expert constitutes substantial evidence. *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001).

Plaintiff contends that, while the ALJ found that Plaintiff had moderate limitations in his ability to interact with others and maintain pace and concentration, as well as marked limitations in adapting and managing himself, the ALJ only incorporated a single social limitation – that there be no more than frequent interaction with supervisors, coworkers, and the public – in the RFC and hypothetical question. As both parties note, the term "marked" means a serious limitation, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d),

and the term moderate means a "fair" ability to perform the identified function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c). That means the RFC and hypothetical question must account for the fact that Plaintiff has only a fair ability to interact with others and maintain pace and concentration and that Plaintiff has serious limitations in his ability to adapt and manage himself.

The ALJ's RFC finding more than accounts for these limitations. To address Plaintiff's limitations in his ability to interact with others, the ALJ limited Plaintiff's interactions with co-workers, supervisors, and members of the public, as well as the noise level of any prospective employment. And to account for Plaintiff's limitations regarding his ability to maintain focus, persistence, and pace, the ALJ limited the work to simple, repetitive, and routine tasks, that required only simple work-related decisions. The ALJ incorporated the same limitations into the hypothetical question posed to the vocational expert. The ALJ supported these findings with extensive discussion of Plaintiff's daily activities, including his ability to care for himself, work that he completed on the farm and at two fast food restaurants, and the medical status examination prepared by Dr. Bourdeaux-Colburn. This evidence showed that Plaintiff was capable of managing his finances, taking care of his hygiene, and feeding and dressing himself. It further showed that Plaintiff worked several hours a week at the farm and 20 hours a week at the two fast-food restaurants, with relatively few issues. Under the circumstances, the ALJ's findings were supported by substantial evidence.

### D.  Medical Opinion Evidence

Plaintiff next argues that the ALJ erred by failing to give controlling weight to the opinion of Dr. Remple, Plaintiff's treating physician. Under 20 C.F.R. § 404.1527(c) or § 416.927(c), medical opinions from treating sources are weighed using several factors: (1) the examining relationship; (2) the treatment relationship, such as the (i) length of the treatment relationship and frequency of examination and the (ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. If a treating source's medical opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is given controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1502(a), 416.902(a). "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007). An ALJ "may give a treating doctor's opinion limited weight if it provides conclusory statements only[.]" *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995)). Additionally, "[a] treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).

The ALJ gave little weight to Dr. Remple's opinion that Plaintiff's diagnosis of "autistic disorder" impaired his ability "to engage in social function," caused significant anxiety, and therefore made it unlikely that Plaintiff would maintain a competitive job. (Tr. 24-25). The ALJ explained that Dr. Remple's opinion was conclusory and that it was rendered before a psychiatric assessment was completed and before Plaintiff obtained entry level of employment. The ALJ also noted that, to the extent Dr. Remple opined on Plaintiff's ability to work, that portion of the opinion intruded on a determination left only for the Commissioner.

The ALJ's decision is supported by substantial evidence. As the ALJ noted, Dr. Remple offered his opinion before Plaintiff worked successfully at the two fast food restaurants, each of which required him to interact with coworkers and customers. The ALJ also discussed extensively the neuropsychological evaluation completed by Dr. Wichterman, who noted that Plaintiff should seek a position that requires him to accomplish predictable and routine tasks. The ALJ also considered Plaintiff's other work experience, the observations made by other counselors and medical providers, and the impact that certain medications had on Plaintiff's ability to function. When "better or more thorough medical evidence" exists, the ALJ may disregard the treating provider's opinion and place greater weight on that offered by other providers, so long as the ALJ gives reasons for the assessment and those reasons are supported by substantial evidence. *Smith v. Colvin*, 756 F.3d 621, 625-26 (8th Cir. 2014) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). The ALJ did so here. The ALJ identified both the medical and non-medical evidence that the ALJ believed to be more persuasive. The ALJ explained why he

believed that evidence to be more persuasive, focusing in particular on the consistency of the medical records with Plaintiff's employment history and ability to care for himself. Under the circumstances, the ALJ's decision to place little weight on the opinion of Dr. Remple was not erroneous.

For the same reasons, the ALJ's decision to place substantial weight on the opinions of the state consultants was not erroneous. Typically, such opinions are "entitled to little weight" when evaluating a claimant's disability, particularly when compared to a treating provider's opinion. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). But the ALJ may place greater weight on those opinions if he determines those opinions are better or more thorough and so long as he offers reasons for that assessment that are supported by substantial evidence. *Colvin*, 756 F.3d at 625-26. In this case, the ALJ explained that the state agency consultant opinions were consistent with the evidence in the record as a whole, including Plaintiff's course of treatment and daily activities. The ALJ was well within his discretion to rely on the state agency opinions for this reason as well.

Plaintiff spends some time in his brief identifying portions of the record that support his proposed interpretation of Dr. Remple's opinion, as well as the fact that other medical opinion evidence supported the finding that he was unable to sustain competitive employment. The fact that Plaintiff is able to identify some evidence in the record that supports his position does not mean the ALJ's decision must be reversed. *Woolf*, 3 F.3d at 1213. Nor does it mean a particular finding is not supported by substantial evidence. *Thiele v. Astrue*, 856 F. Supp. 2d 1034, 1045 (D. Minn. 2012) (citing *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994)). The ALJ was well within his discretion to conduct an

independent assessment of the evidence and find that Plaintiff's successful employment at two different restaurants, his ability to care for himself, and his work on the family farm outweighed the opinions of those providers who believed he was unable to work full-time.

Plaintiff does argue, however, that the ALJ's reliance on his employment with fast food restaurants is insufficient to undermine the medical evidence in the record. Plaintiff contends that this employment was part-time and that he completed this employment only because he received accommodations. But Plaintiff testified that he was working part-time because he needed time off to assist his family at their farm. (Tr. 48). He also testified that he would be willing to look into full-time employment with Dairy Queen, and that he could "get used" to the stress of additional hours. (Tr. 48). The Eighth Circuit has previously held that part-time work may be considered in assessing a person's ability to perform substantial gainful activity. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (considering part-time work, activities of daily living, and noting that "[w]orking generally demonstrates an ability to perform a substantial gainful activity"). Under the circumstances, the ALJ did not err by considering Plaintiff's part-time employment.

Furthermore, the record suggests that Plaintiff worked substantial hours. At the hearing, Plaintiff testified that he worked extensively at the farm. (Tr. 49). He also testified that he worked approximately 20 hours per week at the two different restaurants. For this reason as well, substantial evidence supports the ALJ's finding that Plaintiff's various part-time jobs demonstrated that he was capable of full-time work.

Plaintiff also contends that, if the ALJ had questions regarding his functional limitations, the ALJ was required to contact either his treating physician for clarification

14

or discuss those concerns with the vocational expert. He contends that by failing to do so, the ALJ overstepped his bounds and acted as both the medical and vocational expert. This is not the case. "It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians." *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). The ALJ fulfilled his duty to consider the record as a whole and balanced the opinions of the various medical providers and consultants, as well as Plaintiff's work history and responsibilities. Based on the review of that evidence, the ALJ set forth an RFC that adequately encompassed Plaintiff's limitations.

### E.  Constitutionality of ALJ Appointment

Plaintiff finally argues that the ALJ who presided over his hearing was not properly appointed under the Appointments Clause of the Constitution. He asks the Court remand this matter so that it may be heard by an ALJ who was properly appointed. The Commissioner does not argue that the ALJ's appointment was constitutional, but instead contends that Plaintiff forfeited this argument by failing to raise it before the ALJ.

The Eighth Circuit has determined that because a constitutional challenge under the Appointments Clause is non-jurisdictional, a party may forfeit a challenge under that clause by failing to raise it at the administrative level. *N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013). And, in the context of a Social Security disability proceeding, the Eighth Circuit has held that failure to raise a claim to the ALJ results in waiver of the claim on appeal. *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003). The Supreme Court also reaffirmed recently that a person is entitled to relief only if he or she "makes a timely challenge" to the administrative body for relief. *Lucia v. SEC*, 138 S.

Ct. 2044, 2055 (2018) (citation omitted). Though the Eighth Circuit has not yet addressed the validity of ALJs appointed to hear Social Security disability claims, it appears that every court in this district that has considered the issue has determined that, based on some or all of the above precedent, a claimant waives the issue if he or she does not raise it to the ALJ. *Long M. v. Berryhill*, No. 18-cv-862, 2019 WL 2163384, at *8 (D. Minn. May 17, 2019); *Audrey M.H. v. Berryhill*, No. 17-cv-4975, 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); *Catherine V. v. Berryhill*, No. 17-cv-3257, 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019). The Court agrees with the reasoning set forth in those cases. Because Plaintiff did not challenge the validity of the ALJ's appointment during the administrative proceeding, he has forfeited that argument on appeal.

## IV.    RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 11) be **DENIED** and the Commissioner's Motion for Summary Judgment (ECF No. 14) be **GRANTED**.


Date: October 3, 2019                                  *s/ Tony N. Leung*
                                                                    Tony N. Leung
                                                                    United States Magistrate Judge
                                                                    District of Minnesota

                                                                    *Thomas R. W. v. Saul*
                                                                    Case No. 18-cv-3041 (SRN/TNL)

## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).